MARY E. HARDEMAN ET AL. v. HUDSON MAUD.

No. 6389.

1. **Condemnation for the Capital—Estoppel.**—Even if it be conceded that the proceedings which were taken to condemn the lands designated for the capital of the Republic were defective, so that of themselves title would not be passed to the Republic of Texas, still long acquiescence—living twenty-five years near the land without complaint—and other acts and conduct of the ancestor of the plaintiffs in evidence, constituted an estoppel against the ancestor, and such estoppel would conclude his heirs.

2. **Estoppel.**—See facts held to constitute an estoppel binding heirs of an' owner of one of the tracts of land condemned at instance of the commissioners acting under the Acts of Congress for the location of the capital of the Republic of Texas.

APPEAL from Travis.    Tried below before Hon. A. S. Walker.
The opinion states the case.

*F. G. Morris,* for appellants.—1.    The thirteenth section of the Bill of Rights in the Constitution of the Republic of Texas, by prohibiting the taking and application of private property to public use without just compensation being made therefor, clearly implied a prohibition of the taking of private property for other than public uses, with or without compensation, which is also implied from the nature of all governments other than despotisms.    Cole v. La Grange, 113 U. S., 7; Pumpelly v. Green Bay Co., 13 Wall., 177; Railway v. Dickenson, 66 Am. Dec., 153, note.

2.    Whether the use is public or private for which private property is sought to be taken under the power of eminent domain is a question for judicial determination.    Matter of Danville Cemetery Assn., 66 N. Y., 569; Beckman v. Railway, 22 Am. Dec., —, note.

3.    It appearing on the face of the Act of January 14, 1839, that only a few lots out of a mile square city to be laid off were sought to be obtained for public purposes, and that the object was to take from one to four leagues of land from some persons without their consent for the purpose of selling the same to other private persons (except a few lots), without using the same at any time for public purposes or charging the proposed vendees with occupying or using the same for any public purpose, said act and the proceedings thereunder being taken avowedly against Rogers' consent were null and void, especially as to the lots in controversy, which were outside of the mile square city laid off under said act from which the lots for public purposes were to be selected.    Act Jan. 14, 1839; Coster v. Tide Water Co., 18 N. J. Eq., 54; In re Road Co., 35 N. H., 134; Jordan v. Woodward, 40 Me., 317; Cool. on Const. Lim., 5 ed., *530, *531; Ryerson v. Brown, 24 Am. Rep., 564, note; Beekman v. Railway, 22 Am. Dec., 686; Buchingham v. Smith, 10 Ohio St., 288; Vorick v. Smith, 5 Paige, 137.

More property than is sought for public purposes can not be condemned. Cooper v. Williams, 5 Ohio St., 391; Heyard v. Mayor, 7 N. Y., 323; Bradshaw v. Omaha, 1 Neb., 31.

4.   The Act of January 14, 1839, being unconstitutional because attempting to take private property for other than public uses, the proceeding had thereunder did not create in favor of Rogers any lawful claim against the government for compensation, and it not being lawful to take private property even for public use without compensation, the proceeding was null and void, because no compensation was paid or legal method fixed by law through which Rogers could have obtained compensation. Johnson v. Alameda County, 14 Cal., 106; Langford v. United States, 101 U. S., 341; Nichols v. Bridgeport, 23 Conn., 199.

5.   The act of January 14, 1839, and the condemnation proceedings thereunder were null and void, because no method was provided by said act for compensating those whose property might be condemned, and there was not provided in said act any certain legal remedy by which such compensation could certainly be enforced by law.   Butler v. Comrs., 39 N. J. Law, 667; Bloodgood v. Railway, 18 Wend., 9; Cook v. Comrs., 61 Ill., 123; Murphy v. De Groot, 44 Cal., 52; In re Willis Avenue, 22 N. W. Rep., 871.

6.   If the law of January 14, 1839, had made any provision for compensation for property condemned, the proceedings thereunder would still have been void for failure to render any judgment for Rogers for any compensation.   The proceeding having shown that the land was claimed by two parties, and the verdict only having found the value and not to whom the money should be paid, and no judgment in favor of any claimant having been rendered on said verdict, no right against the government was established by the judgment in favor of Rogers for any compensation, without which the condemnation proceeding was void.   Wagner v. Railway, 38 Ohio St., 32; Bloodgood v. Railway, 18 Wend., 9; Rider v. Striker, 63 N. Y., 136; Nichols v. Bridgeport, 23 Conn., 190; Railway v. Laurie, 63 Ill., 266.

7.   The condemnation proceedings of April, 1839, being void, Rogers was on the same plane with other citizens as to parting with his property in February and March, 1840, when he gave the receipt and agreement to convey to the Republic the land in question, upon condition that the government should fully pay him for his land; and this not having been done he never even became obligated to make title to the government, and it is not pretended that he ever made any such conveyance, but it appears that the contract was abandoned by the State and Rogers in 1841—the latter by taxing the land and patenting it to Rogers, and he by paying the necessary tax to obtain a patent and demanding and receiving the same.

8.   The condemnation proceedings of April, 1839, being void, the subsequent special act of 1840, providing for payment for the land alleged to be condemned, and the delivery to Rogers of promissory notes of the Republic calling for the amount of the estimated value of the land in

1839, but which were never paid, did not pass the title of Rogers. This did not give any validity to the condemnation proceedings, so that this could have passed the title, they being void and incapable of ratification; nor was Rogers' title otherwise passed by these subsequent acts, because they do not evince a new transaction or sale by Rogers in writing or otherwise, but merely show an acceptance by Rogers of promissory notes of the government, showing an intention on his part to accept pay for the land which the government held, and proposed to hold and pay for, whether it had title or not, but which payment he did not in fact receive so far as the evidence and the laws trace such notes. Act Jan. 16, 1840.

Note 1011 to article 4576, Paschal's Digest, provides that laws shall take effect forty days after adjournment of Congress. This Congress adjourned February 5, 1840. This shows that the appropriation act of the same session (Laws 1840, p. 207) in which appropriation was made for payment for land selected for site for seat of government and the special act in the record did not take effect until March 16, 1840, the same time at which the common law and act concerning conveyances requiring written conveyances of real estate took effect, and that therefore the promissory notes of the government were not delivered to Rogers until after said laws took effect, up to which time he had done no act affecting his title.

The following are acts providing for issuing promissory notes and affecting their use: Acts 1837, pp. 45, 51, 249; Acts 1839, p. 51; Acts 1840, p. 190; Acts 1842, p. 55; Acts 1848, p. 208; Acts 1850, p. 198; Acts 1852, pp. 38, 47, 97, 110, 130; Acts 1853, p. 54; Acts 1854, pp. 7, 79; Acts 1856, pp. 47, 83, 116; Acts 1858, pp. 262, 281; Acts 1860, p. 48.

*A. H. Graham*, for appellee. — 1.   While it is true that the question whether the use for which private property is taken is a public use is a judicial question to be determined by the courts, yet when the uses are in fact public, the necessity or expediency of taking such property for such uses by the exercise or delegation of the power of eminent domain, the instrumentalities to be used, and the extent to which such right shall be exercised or delegated, are questions to be determined by the Legislature. Laws Republic of Texas, 1839, 161; In re Cemetery Assn., 66 N. Y., 569; In re Fowler, 53 N. Y., 60; Park Comrs. v. Armstrong, 45 N. Y., 234.

2.   The judgment of a court possessing competent jurisdiction is final, not only as to the subject matter thereby actually determined, but as to every other matter which the parties might have litigated in the cause and which they might have had decided. Voorhees v. Bank, 10 Pet., 449; Le Guen v. Gourvernor, 1 Johns. Cases, 436; Outram v. Morewood, 3 East., 346; Etheredge v. Osborn, 12 Wend., 399.

3.   Admitting that the act of Congress under which the land was sold was invalid, and that there were irregularities in the condemnation proceeding thereunder which might have worked a reversal had the judgment

been revised, this invalidity and these irregularities were waived by appellants' ancestor James Rogers, and they, appellants, are estopped by his act. Park Comrs. v. Armstrong, 45 N. Y., 234; Embury v. Conner, 3 N. Y., 511; Baker v. Braman, 6 Hill, 47.

ACKER, PRESIDING JUDGE.—This is an action of trespass to try title, instituted in the District Court of Travis County, on the 11th day of October, 1887, by appellants against the appellee, to try the title to parts of lots Nos. 1 and 2 in block 1 of a subdivision of lots Nos. 5,.6, 7, and 8 of a subdivision of outlot No. 10 in division Z of the outlots of the city of Austin.

The defendant answered December 22, 1887, pleading "not guilty," and setting up the condemnation proceedings taken by the Republic of Texas in 1839 to condemn certain tracts of land, including the lots in question, for a seat of government, and alleging that plaintiffs claimed the lots in controversy as heirs of James Rogers, the original grantee of a third league tract included in said condemnation proceedings and embracing the lots in controversy, and which tract of land had been patented over by the State in 1848, under one of which patents the defendant has a regular chain of title.

The defendant further pleaded, substantially, that plaintiffs' ancestor had ceased to pay taxes and abandoned the land in controversy for more than twenty-five years prior to his death, and acquiesced in others buying it from the State, and improving and paying taxes thereon.

The case was tried before the court without a jury and judgment rendered for defendant December 22, 1887. Plaintiffs appealed.

Plaintiffs relied upon the following evidence of title: A certified copy of the headright certificate of James Rogers for a league and labor of land, issued January 22, 1838, and a certified copy from the General Land Office of field notes of a survey of 7 labors and 459,517 square varas of land surveyed in Bastrop County, March 1, 1838, and a certified copy of a patent number 45, volume 1, to said James Rogers for the same land, issued by the Republic of Texas on the 6th day of February, 1841. It was admitted by defendant that the lots sued for by plaintiffs in this suit are a part of the land described in said patent; also that James Rogers died in 1864 intestate, and the plaintiffs are the only heirs of said James. Rogers. Here plaintiffs rested.

The defendant introduced in evidence:

1. Certified copy of the proceedings of the County Court of Bastrop County, as follows: "Special term of court held at the court house in the town of Bastrop on the 3d day of April, 1839. Present: L. C. Cunningham, C. J. C. B.; S. R. Miller, clerk; A. Mays, coroner, ex officio sheriff. In conformity with the provisions of the fourth section of the act entitled An Act for the permanent location of the seat of government, the

commissioners, to-wit, Albert C. Horton, William Menefee, Lewis C. Cook, Isaac W. Barton, Isaac Campbell, did on the 23d day of March, 1839, present their petition setting forth the following, to-wit: That they have selected five thirds of leagues of land and two labors of land, situated, lying, and being in the county of Bastrop and Republic of Texas, on the east bank of the Colorado River, on a part of which stands the town of Waterloo, and the remainder of which are near or adjoined to said town and known as thirds one (1), two (2), three (3), four (4), and fractional third number ——, and the said labors known as number five (5) and number ——. Said commissioners further represent that third of a league number one (1) is the property of George Neill, residing in Washington County in said Republic; number two (2) is the property of Logan Van Deveer; number three (3) is the property of Aaron Burleson and George D. Hancock; number four (4) is the property of Edward Burleson and Joseph Porter Brown, and the said fractional third is the property of James Rogers; all of the last named persons residing in the county of Bastrop. And of the labors aforesaid number five (5) the property of Jacob Harrell and number —— west of Waterloo and adjoining thereto is the property of Edward Burleson, both of the county last aforesaid; and that the above named individuals have the lands surveyed and claim the same as their property; and likewise that James F. Perry, executor of the last will and testament of Stephen F. Austin, deceased, claims all the said land as the property of the succession of said Stephen F. Austin, deceased. Whereupon the proper writ was issued and delivered to the sheriff, requiring him to cite the said defendants to appear at the court house in the town and county of Bastrop, by 10 o'clock on the 3d day of April, 1839, in accordance with the above recited act, and also directions to said sheriff requiring him to summons six disinterested citizens of the county of Bastrop to appear in like manner at the court house in the town of Bastrop on said 1st day of April, 1839. April 3, 1839, this day the sheriff made return of said writ executed; likewise returned the names of the following individuals, to-wit, Bartlett Sims, B. M. Clapton, John Brown, James Staniford, Jeptha Boyce, James Lynn, who he had summoned as jurors. Whereupon the following defendants appeared in their own proper persons, to-wit, George Neill, Logan Van Deveer, Aaron Burleson, George D. Hancock, and Joseph Porter Brown; and Edward Burleson, Jacob Harrell, and James F. Perry, being solemnly called, came not but made default, whereupon the court appointed William Pinkney Hill curator for all said absent defendants. Said jurors being sworn according to law, and after hearing the testimony in the case, retired for deliberation, and returned the following verdict, to-wit:

" ' *Republic of Texas, County of Bastrop.*—We, Bartlett Sims, B. M. Clapton, John Brown, Jeptha Boyce, James Staniford, and James Lynn, being duly summoned and sworn as jurors to fix the value of five thirds

of leagues of land and two labors of land, lying on the east bank of the Colorado River, on a part of which stands the town of Waterloo, and claimed by individuals hereinafter named, have agreed on the following prices, viz.: One-third No. 1, claimed by George Neill, at ($3.50) three dollars and fifty cents per acre; one-third No. (2) two, claimed by Logan Van Deveer, at ($3.50) three dollars and fifty cents per acre; one-third No. (3) three, claimed by Aaron Burleson and George D. Hancock, at ($3.50) three dollars and fifty cents per acre; No. (4) four, claimed by Edward Burleson and J. Porter Brown, at ($3) three dollars; and No. (5) five, claimed by James Rogers, at ($3) three dollars; and labor No. (5) five, claimed by Jacob Harrell, at ($3) three dollars; and No. ——, claimed by Edward Burleson, at ($3) three dollars per acre, without including any improvements which may be on any of the aforesaid tracts of land. All of which is respectfully submitted.

"'Given under our hands at the the town of Bastrop this third day of April, A. D. 1839.

> "'BARTLETT SIMS,
> "'B. M. CLAPTON,
> "'JOHN BROWN,
> "'JAMES STANIFORD,
> "'JEPTHA BOYCE,
> "'JAMES LYNN.'

"Whereupon it was ordered, adjudged, and decreed by the court that the sheriff of the county of Bastrop be required to proceed forthwith and make to the Republic of Texas a deed of said land, pursuant to the provisions of the (5) fifth section of the before recited act.

> "L. C. CUNNINGHAM,
> "Chf. Justice C. B."

2. A deed executed by the sheriff of Bastrop County to the Republic of Texas, dated April 3, 1839, reciting the foregoing condemnation proceedings, and purporting to convey the lands described in said proceedings in pursuance thereto.

3. A certified copy from the office of Secretary of State of a special act of the Congress of the Republic of Texas, approved February 1, 1840, authorizing the Treasurer of the Republic of Texas to pay to James Rogers the sum of $3967 for seven labors and 459,517 square varas of land, and making like provisions for payment of each of the other persons whose lands were condemned by said proceedings, and concluding section 1 with the words: "The said lands being selected for public purposes by the commissioners appointed to locate the seat of government." Other sections required the parties mentioned to give the Republic their obligations with security that they would refund the amount paid them "in the kind of funds in which the same may be paid" if it should be established judicially that they were not the owners.

4. Plaintiffs admitted that the records of the State Treasurer's office show that James Rogers, in the month of February or March, 1840, received of the Republic of Texas its promissory notes calling for the amount assessed as the value of the land in the condemnation proceedings in evidence, and that such records show that said promissory notes were delivered to James Rogers for said land; but the records do not show whether said notes were given or accepted as a payment either in whole or in part absolutely, or whether they were given or accepted only as an evidence of the debt owing by the Republic, or upon what terms they were received by Rogers. The said notes were such as at that time were used as a circulating medium as provided by laws then in force. Plaintiffs admitted that for a valuable consideration paid by James H. Raymond at sale of lots by the State of Texas a patent was issued to James H. Raymond, in the year 1848, for 40 acres of the land described in the said patent to James Rogers, which 40 acres includes the lots sued for in this suit, and that the defendant has a regular chain of title from James H. Raymond down to himself, and has the title to the land in controversy if the State had the title to said 40 acres at the time of issuing said patent to James H. Raymond.

Plaintiffs further admitted that all of the land described in said patent to James Roger was patented by the State of Texas in 40-acre lots to sundry persons between 1848 and 1850, by virtue of sales for valuable considerations paid by the purchasers under laws duly authorizing such sales and patents, if the title to the land was in the State of Texas, and that James Rogers knew of said sales; and that one of said 40-acre lots so patented has been occupied and held and possessed by James H. Raymond under a patent thereto, and adversely to all other claimants continuously ever since the year 1850; and that the persons to whom the said 40-acre tracts were patented and their vendees have paid all taxes thereon since the same was patented to said sundry persons; and that James Rogers did not pay any taxes on said land after the same was patented in 40-acre tracts, either upon the 40-acre tract which includes the lot sued for herein or on any other of said tracts. The defendant proved that James Rogers petitioned the Legislature in 1856, and several times thereafter, to pay him a balance which he claimed the State owed him on the judgment in the condemnation proceedings for the land described in the patent to James Rogers in evidence.

In rebuttal the plaintiff proved that James Rogers on the 25th day of February, 1841, paid the taxes on the land described in the said patent to James Rogers for the 1840, and filed the receipt therefor in the General Land Office of Texas to obtain a patent on said land.

The plaintiff introduced in evidence the following certificate of the Acting Commissioner of the General Land Office:

"GENERAL LAND OFFICE, AUSTIN, TEXAS, April 5, 1887

"This is to certify that it appears from the records of this office that patent No. 45, volume 1, for 7,459,517 square varas of land, situated in Travis County, Texas, was issued and delivered to James Rogers February 26, 1841.

[L. S.]    "In testimony whereof I hereunto set my hand and the seal of said office the date first above written.

"R. C. SHELLEY,
"Chief Clerk and Acting Commissioner."

The defendant admitted that W. N. Hardeman, the husband of the plaintiff Mary E. Hardeman, would testify as follows if sworn in the case: That he saw a receipt given by James Rogers to the Republic of Texas on file in the Comptroller's Office, which is lost and can not be found after diligent search by the Comptroller, and which was in the handwriting of James Rogers, and which stated, in substance, that he had received from the Treasurer of the Republic of Texas promissory notes of the Republic calling for $3967 on the land selected for the seat of government, and that he would make the Republic a deed for the land when the Republic paid him the balance due. That he saw said instrument in the year 1870; that it was signed "James Rogers;" that he did not remember the language of said instrument nor any part thereof, nor the date thereof; nor does he remember that the receipt stated when the money was paid. He only remembers that the instrument recited payment as above stated, and what is above stated by him was the substance of the contents of said instrument.

The plaintiffs proved that the promissory notes of the Republic of Texas were worth in legal tender money from 1840 to 1845 inclusive 25 cents of legal money for $1 promissory notes; and that the lot in controversy is outside of the mile square city laid off under act of the Republic of Texas, entitled An Act for the permanent location of the seat of government, approved January 14, 1839.

Under the assignment of error presented two contentions are made:

1. That the condemnation proceeding, when concluded, was absolutely null and void as to James Rogers, and that it did not therefore vest in the government any right, or begin any inchoate or embryo right on the part of the government to acquire Rogers' property which was susceptible of being completed into a perfect acquisition of title by any act of the government.

2. That the acts of Rogers—and he does not appear to have taken any action until nearly a year after the condemnation proceeding was terminated—did not, singly or collectively, operate to pass his title to the real estate in question, nor operate to prevent him from recovering the same in this action.

Under the view we entertain as to the rules of law that must govern in the disposition of this case, the correctness of appellants' first contention

might be conceded, and yet the judgment of the court below must be affirmed.

Rogers, the original grantee, was fully informed of the condemnation proceeding, and seems to have fully approved and acquiesced therein. Within one year after the condemnation proceeding he paid the taxes on the land in order that the patent might issue, which seems to have been thought necessary to perfect the State's title under the condemnation proceeding. He accepted from the State the compensation for the land as provided by the law, and we think it immaterial whether the paper he received as compensation was worth 25 or 100 cents on the dollar. He lived for twenty-five years after the condemnation, and never paid taxes on the land, except the one time for the purpose of obtaining the patent, and if during all these years he ever set up any claim to the land the fact is not disclosed by the record. On the contrary, it appears that he held the obligations of the government issued to him as compensation for the land, and made repeated efforts to get the State to provide for the payment of those obligations. After the patent issued to him and the condemnation proceeding given full effect, the land was divided into blocks of 40 acres, sold, and patented by the State to purchasers for valuable consideration about ten years after the condemnation, and he offered no word of protest or objection. If the condemnation proceeding was void there could, of course, be no ratification of it, for that which is void can not be the subject of ratification. But if the long acquiescence, acts, and conduct of James Rogers, the original grantee, above recited do not constitute an estoppel *in pais* by which he was effectually precluded at the time of his death from ever asserting any title or claim to the land, we are unable to conceive of any acts or conduct that would have had that effect. If Rogers, the ancestor, is estopped, so also are his heirs.

We are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted June 24, 1890.