TEXAS & PACIFIC RAILWAY COMPANY v. WILSON HACK LINE.

Decided April 4, 1907.

### 1.—Loss of Goods in Transit—Measure of Damage.

The consignee and owner of a shipment of goods lost in transit may recover the reasonable value of the goods at destination, although the consignor, having a lien upon said goods to secure the purchase price, could recover no more than the price at which the goods were sold by him.

### 2.—Sale of Goods—Title—Right of Possession—Bill of Lading.

Goods were sold in St. Louis, upon a contract by which a delivery of the goods to the carrier in St. Louis would vest the title in the purchaser; the bill of lading contained the stipulation "shipper's order, notify" the purchaser, and the seller drew a draft on the purchaser with the bill of lading attached for the purchase price. Held, the effect of the transaction was to vest the purchaser with the title to the goods upon delivery to the carrier, but the right of possession remained in the seller until the draft was paid.

### 3.—Second Hand Articles—Measure of Value.

In a suit for the value of second-hand vehicles lost in transit, it appearing from the evidence that the vehicles had no market value at their destination, the proper measure of recovery by the owner was the actual value of the vehicles, and a charge by the court as follows: "In determining this question you are authorized to take into consideration all of the testimony concerning the cost of such property when new, and the cost at second-hand, the testimony as to what plaintiff paid for it, and as to whether it was new or second-hand when plaintiff bought it, and the condition of the property when it left St. Louis, and all the facts and circumstances admitted in evidence before you, insofar as they disclose the history of the property that will enable you to determine what the property would have been fairly worth in Houston at the time it should have arrived there," was correct, and the evidence therein referred to was proper to be considered.

**4.—Undisputed Evidence—Charge.**

Where the evidence was undisputed that the vehicles in controversy were second-hand, a charge that the jury, in determining the value of the vehicles, might take into consideration whether they were new or second-hand, could not have been understood as meaning more than that the jury should take into consideration the fact that the property was second-hand, and not new.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*W. L. Hall* and *Wilson & Dabney,* for appellant.—The rule that damages are to be measured by the value of the goods at its destination, does not apply when the articles are shipped by the consignor and consignee with a view of sale at the destination, reserving the title, as in this case, if thereby the amount for which the goods were proposed to be sold will be exceeded, this amount being the maximum of any possible recovery: Gulf, C. & S. F. Ry. v. Key, 16 S. W. Rep., 106, and 543; Missouri, K. & T. Ry. v. Witherspoon, 18 Texas Civ. App., 616; Louisville & N. Ry. v. Hartwell, 36 S. W. Rep., 184; Magnin v. Dinsmore, 62 N. Y., 45; Hutcheson on Carriers, section 770, 88 Am. St. Rep., note, page 87.

The transfer of a bill of lading cannot give a higher right than the transferer has, and the assignee only acquires the rights of the assignor; and, furthermore, the apparent owner of the goods and the person delivering them to the railroad can bind the real owner, though he be nothing more than the agent, and the bill of lading issued to such person, and all the legal consequences growing out of the relation of such person and the form of the bill, bind the assignee thereof and the carrier: Ryan & Co. v. Missouri, K. & T. Ry., 65 Texas, 13; McMillan v. Michigan R. R., 16 Mich., 79; 93 Am. Dec., 220 and 224; Bank of Bristol v. Baltimore & O. Ry., 99 Md., 661; 105 Am. St. Rep., 326; 4 Ency. of Law, new edition, page 549; 105 Am. St. Rep., note, page 346; 88 Am. St. Rep., note, p. 87.

It was error to permit the plaintiff's president, and the witnesses called by him, to give their opinion as to the value of these vehicles new, and as to their value second-hand at the time when they should have reached Houston, in answer to general questions, not limited to the value to plaintiff, it being conceded that the vehicles had no market value, and no market value being proved, and the testimony of the witnesses being a mere opinion and guess, based upon hearsay, or upon no basis at all, as to the value of the vehicles new and their value second-hand, such testimony invades the province of the jury, and is based upon mere guessing and self-interested motives. International & G. N. R. R. Co. v. Nicholson, 61 Texas, 554; Southern Pac. Ry. Co. v. Maddox, 75 Texas, 305; 5 Ency., 376.

*B. F. Louis,* for appellee.—The evidence shows that the jury had before them a sufficiently complete history of the vehicles sued for, upon which to base their verdict, and there is no rule requiring that such evidence shall be introduced in any particular order, or that the same having been introduced by the opposing party, cannot be con-

sidered by the jury. Wells Fargo v. Williams, 71 S. W. Rep., 314; Texas & P. Ry. Co. v. Barber, 30 S. W. Rep., 500; International & G. N. v. Nicholson, 61 Texas, 551; Pacific Express Co. v. Lothrop, 49 S. W. Rep., 898; Jacksonville Ry. Co. v. Peninsular Land Co., (Fla.), 17 L. R. A., p. 57.

REESE, ASSOCIATE JUSTICE.—In this case The Wilson Hack Line, a corporation of that name, sued the Texas & Pacific Railway Company and the International & Great Northern Railroad Company to recover the value of five broughams, the property of plaintiff, which were shipped from St. Louis, destination Houston, Texas, and which, it was alleged, had been lost by reason of the negligence of defendants. The evidence showed that the property was lost while in the possession of the Texas & Pacific Railway Company and that the International & Great Northern Railroad Company was not liable, and the court instructed a verdict for the latter company. The case between plaintiff and the Texas & Pacific Railway Company was submitted to a jury who returned a verdict for plaintiff for $1,852.32 as the value of the goods, with interest amounting to $128.12, for which amount judgment was rendered from which defendant appeals. The material facts are as follows:

Wilson, president of appellee company, bought of the St. Louis Transfer Company in St. Louis a lot of vehicles, among them the five broughams. They were sold to appellee "St. Louis delivery," that is, the goods were to be delivered to the carrier in St. Louis by the seller as the property of appellee which was to pay freight. This seems to have been the intention of both parties to be gathered from the testimony of Wilson, appellee's president, and Tansey, the president of the St. Louis Transfer Company whose deposition was taken by appellant. The price of the nine vehicles sold was $1,450 which was not paid at the time, and the goods were delivered by the St. Louis Company to the carrier at St. Louis for carriage to Houston, Texas, and delivery there to "shippers order, notify Wilson Hack Line." The St. Louis Company drew a draft on appellee for the price and sent it to a bank in Houston for collection with the bill of lading attached endorsed "Deliver to the order of Wilson Hack Line. (Signed) St. Louis Transfer Company. G. B. Walls, Secty. and Treas." When notified of the arrival of the draft appellee paid it and took the bill of lading. The vehicles had been shipped in two cars and when Wilson applied to the freight office of the connecting carrier in Houston he was informed that both cars were there, whereupon he paid the freight upon the whole shipment. Afterwards he found that the car containing the five broughams had not arrived and the freight for that car was refunded to him. The five broughams were all lost while in possession of appellant, one of the connecting carriers, and by its negligence.

Under the first sixteen assignments of error, which are presented together, appellant presents the proposition that the assignee of a bill of lading cannot recover more than his assignor could recover, being the original consignee; and upon one such contract there are not two measures of recovery in different amounts in different hands. Appel-

lant's contention is that the St. Louis Transfer Company having shipped their property to Houston to be there sold to appellee for a certain price could not have recovered of appellant more than the price for which the goods were to be sold, and that therefore appellee cannot in this suit recover more.

It is true that the St. Louis Company could not have recovered of appellee more than the amount stated, in case appellee had not paid for the property. (Gulf, C. & S. F. Ry. v. Key, 16 S. W. Rep., 106.) This for the sufficient reason that this would have been the measure of its loss. It does not follow, however, that appellee is bound by the same measure of damages. We think appellant is mistaken as to the main basis of its contention. The goods were sold in St. Louis, and not shipped to Houston to be there sold in case they arrived. Both the seller and buyer intended that the delivery to the carrier was a delivery of the property in the goods to appellee, and that they were thereafter at its risk. The effect of the consignment to the seller or his order, as set out in the bill of lading, was to give the right of possession of the goods to the seller, until the purchase money was paid. The property passed, but the right of possession was not to pass until the draft for the price was paid, and the bill of lading delivered. Upon the facts of the agreement, as testified to by both appellee's president Wilson, and Tansey, the president of the St. Louis Company, if appellee had refused payment of the draft, the amount could have been recovered of it by the St. Louis Company, and appellee would have been relegated to its remedy against the carrier. Nevertheless the St. Louis Company could have recovered of the carriers the amount which appellee owed, by reason of its lien, to protect which they retained possession of the goods. (1 Parson on Contracts, 526, 537; 6 Cyc. 527; Pilgreen v. State, 71 Ala., 370; State v. Carl, 43 Ark., 353-359.)

It does not matter whether appellee acquired the bill of lading before or after the destruction of the property. The bill of lading was only necessary to enable it to get *possession* of the goods, the *property* in them having passed by agreement of the parties upon delivery to the carrier in St. Louis. It was in the power of the seller and purchaser to make such an agreement, and it would not concern the carrier that they had done so. Its duty was to transport and deliver the goods, and its liability, in the case of loss, was for their value, unless it should appear that a less amount would fully cover the damages for which recovery is sought. (Jelletts v. St. Paul, M. & M. Ry. Co., 15 N. W. Rep., 237.)

Assignments of error from seventeen to thirty are likewise grouped, and under them appellant presents the general proposition that, "The vehicles being second-hand, and having probably passed through many hands, and they having no market value, the measure of damages, (their value to their owner and the actual loss he sustained, not a price suggested by his partiality, nor yet what he could sell them for, subject to our first position) is provable by the history of the vehicles, as far as the same could be obtained, and this history should be as complete as possible, commencing with the original first cost of these vehicles, when new, and coming to the present time, tracing the different

hands they had passed through, giving an account of the amount of use they had undergone, their wear and tear, number of times they had been sold, and for what prices, and showing whether they were in or out of style."

The vehicles were second-hand and it seems to be admitted that they had no market value in Houston. The term "second-hand" is a general one and refers to articles that have been before sold and used, whether one or many times does not matter. In determining their value in Houston at the time they should have been delivered much evidence was offered, all of which was objected to by appellant. This evidence consisted of the testimony of Wilson as to what the vehicles would have cost new in Houston; that they were perfectly sound and practically new except that the varnish and paint was scratched a little; what similar vehicles had been priced to him for in November, 1904; that the vehicles had a standard value; and the prices had been the same for six or seven years, and that upon this standard he had based his estimate of cost; the testimony of Burke, Mosehart and Jansen as to the cost of such vehicles new in Houston, what they were worth in Houston in the condition they were in when they should have reached Houston. The general objection to this testimony was that the property having no market value the best evidence of their value was "to prove the history of the vehicles, the original cost, all the circumstances, degree of wear and tear, their age, whether in or out of style, etc." Special objection was made to any evidence of the opinion of the witnesses as to value. The property having no market value in Houston, appellee's measure of recovery was the actual value. (International & G. N. Ry. Co. v. Nicholson, 61 Texas, 553).

It was shown that the five vehicles lost were the same kind as the two broughams which were delivered, and that they were also second-hand and in the same condition. This was as a basis for the examination of the witnesses who had seen and examined those delivered, but not those lost. All of these witnesses showed themselves to have an intimate knowledge of the value of the vehicles generally, and were qualified to form a correct judgment about the matter as to which they were called to testify.

The history of the vehicles, so far as it could be reasonably obtained, was given, showing the length of time they had been used and their value when new. All the testimony reasonably obtainable to show the real value of the property was introduced. It was necessarily a matter difficult of accurate ascertainment, but the jury was placed in possession of all of the reasonably ascertainable facts to enable them to determine the question. While a full and minute history of the vehicles, their original cost, amount and kind of use, number of times sold, etc., was desirable it was not indispensable. Upon the testimony introduced the court charged the jury as follows:

"In determining this question, you are authorized to take in consideration all of the testimony concerning the cost of such property when new, and the cost at second-hand, the testimony as to what plaintiff paid for it, and as to whether it was new or second-hand when plaintiff bought it, and the condition of the property when it

left St. Louis, and all the facts and circumstances admitted in evidence before you, in so far as they disclose the history of the property, that will enable you to determine what the seven broughams would have been fairly worth in Houston at the time they should have arrived here after November 19, 1904." The giving of this charge is embodied in one of the assignments of error presented. We think that the testimony embraced in the assignments is not subject to the objection made. The assignments are therefore overruled. (3 Wigmore Ev., sec. 1940-3; 1 ed., sec. 720).

The court charged the jury that in determining the value of the property they were authorized to take into consideration, among other things, the question whether the property was new or second-hand. Objection is made that it was error to submit the issue as to whether the property was new or second-hand, as the undisputed evidence showed that it was at least second-hand. The objection is without merit. The charge could not have been understood as meaning more than that the jury should take into consideration that the property was second-hand and not new. The assignment presenting the point is overruled.

Assignments of error from thirty-two to forty grouped, present alleged errors in the admission, over appellant's objection, of testimony as to what the vehicles were worth in Houston, cost, etc., upon the general ground, as stated in the proposition presented under the assignments, that "It was an error to permit the plaintiff's president, and the witnesses called by him, to give their opinion as to the value of these vehicles new, and as to their value second-hand at the time when they should have reached Houston, in answer to general questions, not limited to the value to plaintiff, it being conceded that the vehicles had no market value, and no market value being proved, and the testimony of the witnesses being a mere opinion and guess, based on hearsay, or upon no basis at all, as to the value of the vehicles new, their value second-hand, and such testimony invades the province of the jury, and is based upon mere guessing and self-interested motives."

Without discussing each assignment our conclusion is that they present no error. (3 Wigmore Ev., sec. 1940-1943.)

Assignments of error from forty-one to forty-four grouped complain of the action of the court in allowing certain witnesses to testify over objection of appellant as to the cost, value, etc., of the vehicles on the ground that they had not qualified themselves as experts to give an opinion about the matter. The witnesses were all shown to have had sufficient knowledge of the matter of the cost, value, etc., of such vehicles to qualify them to testify. Two of them were carriage dealers and one of them a carriage repairer.

Assignments of error from forty-five to fifty-eight presenting alleged errors in overruling appellant's special demurrers to the petition, and in the admission of testimony have been considered and are, in our opinion, without merit.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.