The judgment of the trial court is affirmed. Affirmed.

---

## GOODHUE v. HAWKINS.

(Court of Civil Appeals of Texas. Dec. 29, 1910.)

1. APPEAL AND ERROR (§ 1012*)—FINDINGS—CONCLUSIVENESS.

A judgment based on the findings of the court, supported by evidence, will not be disturbed unless the findings are manifestly against the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992; Dec. Dig. § 1012.*]

2. LANDLORD AND TENANT (§ 123*)—LEASE—PROPERTY INCLUDED—EVIDENCE.

Evidence held to support a finding that a lease of a described dwelling in a city, and the yards and outhouses belonging thereto, included a barn.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 436; Dec. Dig. § 123.*]

3. ESTOPPEL (§ 1*)—NATURE OF ESTOPPEL.

Estoppel precludes one from denying a fact which has been admitted or determined by matter of record or by deed, or which he has by an act in pais induced another to believe and act on to his prejudice.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 1.*]

4. ESTOPPEL (§ 78*)—RIGHT OF TENANT—ESTOPPEL.

A lessor in a lease of a described dwelling in a city, and the yards and outhouses belonging thereto, denied the right of the lessee to use a barn on the premises, and began to use water from a hydrant in the barnyard. The lessee in possession paying for the water complained, and

the parties agreed that the lessor should pay the lessee a specified sum per month and thereby reimburse the lessee for the amount that would become due for water used by the lessor. The lessor thereafter continued to use the water and paid the lessee a specified sum monthly during the term of the lease. *Held*, that the lessee was not estopped from insisting that the barn was included in the lease.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

5. DAMAGES (§ 188*) — EVIDENCE — SUFFICIENCY.

Where, in an action by a lessee for the rental value of a barn on the leased premises wrongfully withheld by the lessor, the evidence fixed the value of the use of the barn at $15 per month, a finding that the value of the use was $9 per month was sustainable, as against the objection that the court did not regard the evidence as credible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 511; Dec. Dig. § 188.*]

6. LANDLORD AND TENANT (§ 129*)—PAYMENT OF RENT—RIGHT TO RECOVER VALUE OF PROPERTY WRONGFULLY WITHHELD BY LESSOR.

A lease of a dwelling, and yards and outhouses thereto belonging, stipulated for a monthly rental in a lump sum, in advance, and provided for forfeiture of the lease on nonpayment of the rent. The lessee paid the full rent, though the lessor wrongfully withheld a barn included in the lease. The lessee at all times claimed the right to use the barn and the lessor at times promised to give the lessee the use thereof, and at other times refused to do so. *Held*, that the payment of the rent did not prevent the lessee from subsequently suing for the rental value of the barn, because the payment of the rent without deducting the rental value of the barn was not voluntary.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 450–457; Dec. Dig. § 129.*]

7. PAYMENT (§ 87*)—RECOVERY OF PAYMENTS — VOLUNTARY PAYMENTS — "COMPULSORY PAYMENT."

A payment is deemed "compulsory" when made to free property from an actual and existing duress imposed on it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 283–287; Dec. Dig. § 87.*

For other definitions, see Words and Phrases, vol. 2, pp. 1376, 1377.]

Appeal from Jefferson County Court; R. W. Wilson, Judge.

Action by Mrs. I. Hawkins against Mrs. Josephine Goodhue. From a judgment for plaintiff, defendant appeals. Affirmed.

Rodman S. Cosby and A. D. Lipscomb, for appellant. Broughton & Smith, for appellee.

McMEANS, J. Mrs. I. Hawkins, plaintiff in the court below, sued the defendant, Mrs. Josephine Goodhue, to recover the rental value of a certain stable or barn situated upon premises leased by the former from the latter for the period of 23 months, during which time the plaintiff alleged the defendant wrongfully withheld the possession thereof from her. The case was tried before the court without a jury and resulted in a judg-

ment for plaintiff, from which the defendant has appealed.

The trial judge, upon proper request, filed his findings of facts and conclusions of law which are as follows:

"I find that on April 1, 1907, Mrs. Hawkins, the plaintiff, and Mrs. Goodhue, the defendant, entered into a written contract wherein and whereby Mrs. Hawkins leased or rented from Mrs. Goodhue, for a stipulated period of one year, with the privilege of releasing for another year, 'the two-story frame dwelling at 789 Liberty street in the city of Beaumont, Jefferson county, Tex., and the yards and outhouses to the same belonging and used in connection therewith.' That Mrs. Hawkins was to pay and did pay $75 per month for the premises so described, and that she occupied said premises, and paid the said sum as monthly rent, for a period of 23 months; that the building situated at the rear of the dwelling in question, that is, the building or barn which is the subject-matter of this suit, is one of the 'outhouses' belonging to said dwelling and used in connection therewith; that the parties did not mutually agree before the execution of the contract that said building or barn was to be excluded or excepted from said contract; that it was not the true intention of the parties to so exclude or except the same from said contract; that the practical construction placed upon said contract by the parties was not to exclude the said barn from said contract, but, to the contrary, that said barn was understood by the parties, when the contract was made, to be included in and covered by the contract; that Mrs. Hawkins, relying on such understanding and on the wording and intent of the contract, made due demand on Mrs. Goodhue for possession of said barn; that Mrs. Goodhue withheld possession of the said barn from Mrs. Hawkins for the full period of the latter's occupancy of said premises, to wit, 23 months, and denied her (Mrs. Hawkins) the use and benefit of said barn for said period of time; that the reasonable rental value of said barn during the said 23 months was $9 per month, or $207 for the entire period."

"From the proof established by the evidence, as shown by the foregoing conclusions of fact, I conclude as a matter of law that the plaintiff, Mrs. Hawkins, is entitled to recover of the defendant, Mrs. Goodhue, the reasonable rental value of the property in question during her occupancy of the premises, to wit, $9 per month, or $207 for the entire period."

The defendant excepted to the findings of fact as being against the manifest truth of the case, and by her first assignment of error contends that the judgment of the trial court, being based on the conclusion that the stable was part of the property leased, was

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

against the manifest truth of the case; it appearing that there was affirmative action of the parties eliminating the stable from the contract before its execution.

The evidence introduced by plaintiff to sustain her contention that the stables were included in the lease justified the court in reaching the conclusion that the stables were so included.

The testimony relied upon by defendant to show such conclusion was against the manifest truth of the case consists of the following: The lease contract was in duplicate; each party retaining a copy. As originally drawn, the contract described the property leased as follows: "The two-story frame dwelling at No. 789 Liberty street in the city of Beaumont, Jefferson county, Texas, and the yards, stables, and outhouses to the same belonging and used in connection therewith." At the time the contract was signed by the parties, the word "stables" had been erased, and in the copy furnished to plaintiff the word had been so erased as to be illegible, but in the copy retained by defendant the letters forming the word were plainly legible. We may add that the defendant testified by deposition that the word "stables" was erased, because the stable was not included in the lease, and that it was fully understood by plaintiff that it was not to be included; that at the time of signing the contract plaintiff again asked permission to use a part of the stable, which was refused; that Mr. I. W. Lawhon, a notary, was present at that time. On the other hand, it is shown that the premises at 789 Liberty street consists of two lots, running from Liberty street to Broadway street, which are under one inclosure; the residence is upon the lot fronting on Liberty street. The only outhouses on the lots are a servant's house and the stable; the former being upon the lot in which the residence is situated and the latter upon the lot fronting Broadway. The residence, servant's house and stable, and the fence constituting the inclosure, are painted the same color. The two lots are separated by a partition fence; ingress and egress being had through a large double gate. The stable is so constructed that the wall nearest the residence forms part of the fence, and in this wall there is a door. There are sanitary closets in the stables for the use of servants, and these were used by plaintiff's servants during her occupancy of the residence. Plaintiff testified positively that in negotiating the lease with the defendant the stable was included, and that after the contract had been signed defendant asked permission of her to use a part of the stable for storage purposes. She further testified that she never read the contract herself, and that at the time of signing it, it was read to her and defendant by Mr. Lawhon, and as read it included the "yards" and "outhouses," and that she did not know the word "stables" had been written in the contract and erased, and that she did not know of this fact until her counsel called her attention to it during or just before the trial. She denied that at the time of signing she requested and defendant refused permission to her to use the stable, or that any such controversy arose in regard to the matter in Mr. Lawhon's presence. Mr. Lawhon testified that he was present when the contract was signed and could not recollect any discussion between the parties in regard to the stable. Plaintiff further stated that defendant never questioned her right to the use of the stable until after she went into possession under the contract.

We have not undertaken to state all the testimony introduced by the parties on this issue, but sufficient, we think, to show the evidence relied upon by appellant, viz., that the word "stables" having been written in the lease and afterwards stricken out before the contract was signed was conclusive that the stables were not to be included, and that this conclusively manifested the understanding and agreement of the parties. If there had been no evidence other than the contract itself, the contention of appellant would probably be correct, but that is not the case before us. And in such case, had the description been "and the yards and outhouses to the same belonging and used in connection therewith," without any erasure, it would have been broad enough to include the stable without specifically naming it, upon a showing that the only outhouses were the servant's house and stable. It was not shown at whose dictation the contract was drawn, but the evidence clearly indicates that it was not at the plaintiff's. Nor does the evidence show who made the erasure, but it is very clearly demonstrated that the plaintiff did not, and, furthermore, that she did not know that such erasure had been made. Plaintiff did not read the contract herself, but only heard it read. As read to her, it was a lease of the yards and outhouses belonging to and used with the residence. If she leased the "yards," she certainly leased the structures in the yards, unless they were specifically excepted. What yards then were leased? Evidently the yard in which the residence stood and the yard where the stable was, because the evidence shows that these structures were separated by a fence, thereby making two separate inclosures. Evidently one was the houseyard and the other the barnyard. If only the yard inclosing the residence and servant's house was leased, then why the use of the plural "yards"? If the servant's house was the only outhouse, then why the use of the plural "outhouses"? The plaintiff testified that she did not see the contract before its execution and only at the time she signed it, and had never read it until she did so at the instance of her counsel at the time or just before the trial, and it was then for the first time she saw a blot which appeared to be an erasure. The contract covers three typewritten pages and the

erasure occurs on the first page. We think it quite probable, in view of her testimony, that the notary, having just read the contract to her, did not think it necessary to expose all the pages of the contract to her view, but only the last, upon which her signature was to be written, and that for this reason she was not at fault in not seeing the erasure.

The case was submitted to the court, who heard the evidence and passed upon the questions involved, and his conclusions, when drawn from the testimony, are entitled to and must be accorded the effect given the verdict of a jury, and a judgment based on such findings, when supported by the evidence, will not be disturbed on appeal, unless such conclusions are so manifestly against the preponderance of the evidence as to be clearly wrong. We think that the evidence amply supported the conclusions of the trial court on the issue discussed, and the assignments must be overruled.

The second assignment complains that the court erred in disregarding defendant's plea and evidence of estoppel. On this issue the defendant alleged that "during the period of the leasehold provided for in said contract, the inclosure which included the stable and barn was in use by A. F. Goodhue, the same including a hydrant connected with the Beaumont City Waterworks; that the plaintiff placed a water meter, so that same would measure in connection with the water of the dwelling the water consumed from the said hydrant included in the said inclosure, and obtained from this defendant an allowance for the cost of putting in same, and obtained from this defendant and A. F. Goodhue an allowance of $1 per month for the water consumed from said hydrant in watering stock which were kept by the said A. F. Goodhue in the aforesaid stables and barns and inclosure, and that the said allowance was accepted by the plaintiff with full knowledge and full understanding that the use of said hydrant was merely incident to the use of the said stable and barn by the said A. F. Goodhue. Wherefore plaintiff is estopped from prosecuting this suit, if any cause of action she ever had."

The testimony on this point is substantially that after plaintiff took possession of the premises under her lease, and after defendant had denied her right to the use of the stable, defendant began using water from a hydrant in the barnyard, and that plaintiff, who had to pay for the water, complained of this, and it was agreed that defendant should pay to plaintiff a dollar per month, which sum the parties estimated would reimburse plaintiff for the amount that would become due to the water company for the water so used by defendant, and acting on this agreement defendant continued to use the water and paid plaintiff such sum monthly during the life of the lease.

We do not think that the evidence raises the issue of estoppel. At most, it only shows that the defendant was using water which plaintiff was paying for, and that in paying as she did, defendant was only reimbursing plaintiff the amount the latter became obligated to pay by reason of defendant using the water. Estoppel has been defined, in a general sense, to be a preclusion of a person to deny a fact which has been admitted or determined under such circumstances of solemnity, such as by matter of record or by deed, or which he has, by an act in pais, induced another to believe and act upon to his prejudice. 11 Am. & Eng. Enc. 387. Tested by this definition, the matters alleged and proved did not create an estoppel against plaintiff to assert her right to the use of the stable under her contract. The assignment is overruled.

By her third assignment appellant complains that there was no credible evidence of the value of the use of the barn, and that therefore the court erred in rendering judgment for plaintiff in any sum. In support of this assignment she urges that as the only evidence of the value of the use of the barn was $15 per month, and the court found it to be only $9 per month, that therefore the court did not regard the evidence as credible. This assignment is without merit and is overruled without further comment.

By the fourth assignment appellant complains that the suit of plaintiff was in effect to recover a rebate of payments of rent made by her to defendant, and that since there was no proof that same was paid under any species of coercion, or under influence of any fraud, accident, or mistake, it was error for the court to render judgment for the plaintiff.

We have found that the facts supported the judgment of the trial court upon the issue that plaintiff, under the contract of lease, was entitled to the use of the stable. Being deprived of the use of it by the wrongful acts of defendant, she would be entitled to the value of its use. She did not rent the barn separately from the balance of the premises, but all were included in the one contract. She agreed to pay $75 per month in advance as rent, and the contract provided that any failure on her part to pay this sum each month in advance should avoid the contract and would authorize the defendant to reenter the premises and remove all persons therefrom, and that all claims for damages for or by reason of such re-entry were expressly waived. Plaintiff paid the rent as she agreed to do. According to her testimony she at all times claimed the right of use of the stable, and after the lease was executed the defendant asked permission to make use of a part of the stable for storage. She further testified: "I thought she (defendant) would hold to her contract and give me the stable as her contract called for it, and I expected it. * * * She would tell me I could have it and then she would tell

me I could not have it, and I never knew what to depend on, but I thought she would hold to her contract." If the parties in reaching an agreement as to the amount to be paid monthly as rent had fixed and agreed upon the amount to be paid for the stable separately from the sum to be paid for the balance of the leased premises, and had the plaintiff paid the agreed rentals for the stable, although deprived of its use, then, in such circumstances, this assignment would probably have to be sustained. But this is not the question raised by the proof. The stipulated monthly payments were to cover the rent for the entire premises, which we have held included the stable. A failure to pay as agreed avoided the lease and authorized defendant to retake possession of the entire premises and to remove plaintiff therefrom; and by the very terms of the lease plaintiff could assert no claim for damages against defendant for so doing. The general doctrine has been frequently announced that a payment is not to be regarded as compulsory, unless to free persons or property from actual and existing duress imposed upon it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property. 22 Cyc. 613. Or, to state the proposition conversely, a payment is to be regarded as compulsory when made to free property from an actual and existing duress imposed upon it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property. The parties were not upon equal terms, and the plaintiff should not be denied a right of recovery merely because she did not reserve, from the monthly payments a sum sufficient to cover the value of the use of the stable. City of Marshall v. Snediker, 25 Tex. 460, 78 Am. Dec. 534. The assignment is overruled.

The fifth assignment is disposed of by our ruling upon the first assignment of error. There are no reversible errors disclosed by the record, and the judgment is affirmed.

Affirmed.