WRIGHT BROS. v. LEONARD. (No. 5571.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1916. On Motion for Rehearing, Feb. 9, 1916. Rehearing Denied March 8, 1916.)

1. APPEAL AND ERROR ☞1040 — HARMLESS ERROR—RULINGS ON PLEADING.

Though plaintiff might have made plainer how he sought a recovery, overruling an exception to the petition, on the ground that the action was against a firm, and not its members, *held* harmless, if error, one of the partners having sworn to the answer, and both having testified; and Rev. St. 1911, art. 1863, authorizing in suits against partners, on service of one partner, judgment against him and the firm.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ☞ 1040; Pleading, Cent. Dig. §§ 284, 400, 423, 450, 490, 567, 568.]

2. TROVER AND CONVERSION ☞40—DAMAGES —EVIDENCE—VALUE OF SECONDHAND GOODS —"PRACTICALLY."

Relative to damages for conversion of secondhand goods, it not being shown that there was a market therefore or one where they could be bought, evidence that they cost, when new, $680, and that they were "practically" as good as new, is sufficient proof of the value to warrant a judgment for $250, "practically," in the sense here used, meaning almost or nearly as valuable as when new.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 232–244; Dec. Dig. ☞40.

For other definitions, see Words and Phrases, First and Second Series, Practical.]

On Motion for Rehearing.

3. CHATTEL MORTGAGES ☞148 — FIXTURES — FORECLOSURE — PRIOR EXECUTION SALE OF HOUSE—NOTICE—SHERIFF'S RETURN.

One foreclosing a mortgage on fixtures in a house, and removing them, is not charged with notice of what was shown by the sheriff's return on a prior execution sale of the premises; the deed not being recorded, and papers in a case in court not being constructive notice, except where specially provided for, as in case of lis pendens.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 243; Dec. Dig. ☞148.]

4. CHATTEL MORTGAGES ☞149—FIXTURES— FORECLOSURE — PRIOR EXECUTION SALE — NOTICE—POSSESSION BY TENANT.

One foreclosing a mortgage on fixtures in a house, and removing them, is not charging with notice of the right of a purchaser of the premises at execution sale, because he has a tenant in possession, such tenant being the prior owner, who gave the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 245; Dec. Dig. ☞149.]

5. ESTOPPEL ☞94—JUDICIAL SALE—FAILURE TO GIVE NOTICE OF OWNERSHIP.

One who, after purchasing a house at execution sale, was attorney for the former owner in a suit by another to foreclose a mortgage given by such former owner on fixtures in the house, and gave no notice of his having an unrecorded deed, but approved the judgment of foreclosure, stating that the lien of the mortgage, as it existed at date of its execution, was still in force, and gave no notice at the sale thereunder, is estopped to assert title against the mortgagee, who purchased at the sale under the judgment, and removed the fixtures.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 245–247, 276–284; Dec. Dig. ☞ 94.]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by H. B. Leonard against Wright Bros. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Terrell, Walthall & Terrell, of San Antonio, for appellants. H. B. Leonard, of San Antonio, for appellee.

CARL, J. Appellee, Leonard, recovered a judgment against Wright Bros., a copartnership composed of R. C. and Mark Wright, in the sum of $250 for conversion of certain electrical fixtures. The value of the goods was alleged to be $680.

[1] Wright Bros. filed an exception to the petition because it is a suit against a firm and not against the individual members composing that firm. The petition runs thus:

"Now comes H. B. Leonard, hereinafter styled plaintiff, complaining of Wright Bros., a firm composed of R. C. and Mark Wright, respectfully represents unto the court," etc.

The court overruled that exception, which action of the court is made the basis of the first assignment of error. All through the petition the word, "defendants," is used when referring to Wright Bros. In Hughes Bros. & Co. v. McDill & Grenslet, 1 White & W. Civ. Cas. Ct. App. § 1266, Judge Walker said that:

"It is hypercritical to attempt to pervert the obvious intent of the pleader to sue the members of the firm so as to limit this action to a suit against the partnership effects merely. The petition well and sufficiently supports the judgment against all the defendants."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In the case quoted from the petition read:

"Hughes Bros. & Co., a commercial firm doing business and residing in the city of Dallas, state of Texas, and composed of  *  *  *  [stating the members]."

The judgment would not have been entered unless at least one member had been served, and whether he was cited or not, R. C. Wright swore to the answers filed, and both members testified. Under article 1863, R. S., service on one partner would authorize a judgment against the one served and the partnership. Glasscock v. Price, 92 Tex. 272, 47 S. W. 965; Williams Land Co. v. Crull, 125 S. W. 339; Frank et al. v. Tatum, 87 Tex. 204. In the Williams Land Company Case, supra, Judge Speer says:

"The judgment against 'Williams Land Company, a copartnership composed of W. A. Williams and Clark Marshall,' can be nothing else than a judgment against the individuals composing that firm."

While the plaintiff below might have made his object plainer, as to how he sought a recovery, we do not feel that it is a matter of sufficient importance to constitute reversible error, if indeed it be error at all, to refuse to sustain the exception, and the assignment is overruled.

[2] The second assignment complains that there was not sufficient legal proof upon which to base the judgment for $250, because they contend that the fixtures taken by appellant were not shown to be worth that sum. Appellants swore that the fixtures were worth from $75 to $100. Gray, and others, swore that the plant seemed to run as well after it had been gone over and cleaned subsequent to the last flood on the Salado as it did before, if not better. The property cost, when new, $680, and plaintiff's witnesses swore it looked to be as good as new; and the electrician who overhauled and repaired the plant said it seemed to run perfectly in every particular; that he did not know the original price of a plant like this, but that he considered this one worth practically as much as it was when new. When appellants sued Gray on the notes and to foreclose their mortgage on these fixtures they alleged the value to be $400, and the indemnity bond given the sheriff was for that amount. There is no exception to the character of evidence given, and the electrician says the property was practically as good as new. In the sense in which it is used here, "practically" means almost or nearly as valuable as when new, and in the light of appellants' own allegations that it was worth $400, and the other statements as to its condition and value by appellee's witnesses, we think the evidence is sufficient to support a judgment of $250. These goods were secondhand and in such case the jury, in determining their actual value, could take into consideration the original cost, their condition at the time, and as compared with when new, in order to determine what they were worth at the time converted. T. &

P. Ry. Co. v. Hack Line, 46 Tex. Civ. App. 38, 101 S. W. 1042. In this case it is not shown that there was a market for such goods or a market where same could be purchased.

"The market value of secondhand goods is not what one might get for them from a secondhand dealer, but what it would cost a person to purchase such goods in the open market, if there was a market for such goods." Souther v. Hunt, 141 S. W. 361; Lincoln v. Packard, 25 Tex. Civ. App. 22, 60 S. W. 682; Insurance Company v. Wood, 133 S. W. 288.

In the Souther Case, cited, it is said:

"Where a party by his wrongful act, willfully done, deprives the owner of property, he ought not to be heard to complain if he is required to make good the damage occasioned by his tort, and to pay the injured party what such goods were worth to him would be no more than making good such injury."

This is where there is no market shown for such goods, and in such case it is competent to show what they were worth to the owner. But when the electrician says the goods were worth practically as much as when new, and that value is shown exactly, and the verdict is for not much more than one-third of the original cost, we think the evidence is sufficient. The assignment is overruled.

The third assignment charges error because the court refused to render judgment for appellants on the plea of estoppel as against appellee. C. J. Gray owned the land where the fixtures were installed. In May, 1913, Ferdinand Grobe obtained a judgment against H. B. Leonard, C. J. Gray, et al. for $734.04 and costs. This judgment was, on August 16, 1913, abstracted, and subsequently the land was levied on and sold as Gray's property to satisfy the judgment. H. B. Leonard became the purchaser at the sale for $195, but did not record his deed. Gray remained in possession, and says he was to pay reasonable rent, which, however, he never did pay, because he says Leonard did not call on him for it. Leonard said he would have reconveyed the property to Gray upon payment of the $195 he paid out when he bought it in at the sheriff's sale. On August 15, 1913, Gray executed a mortgage on these fixtures to secure his notes for $480, remaining unpaid on the fixtures to Wright Bros., and while it is admitted that mortgage was good as between Wright Bros. and Gray, it is likewise admitted that Grobe had no knowledge of the existence of any claim Wright Bros. had against Gray, in so far as this property was concerned.

Wright Bros. sued Gray on his notes October 22, 1913, and to foreclose the mortgage. Leonard, as attorney, filed a formal answer for Gray in that suit, and in due time a judgment was taken against Gray, and Leonard O. K.'d that judgment, but he did not tell Wright Bros. that he held a deed to the property and owned the same. This judgment, prepared by Wright Bros.' attorneys, foreclosed the mortgage lien on these electrical fixtures, and on March 24, 1914, the fixtures

were sold under the foreclosure order and bought in by Wright Bros. for $50, which was credited on the judgment after the costs were paid. Leonard intended to be present at the sale to give notice of his claim, but was out of the city at that time. The sheriff went into the house by means of pass-keys, and took the fixtures out after the sale was made, took up the engine and dynamo from the concrete foundation, unscrewed and detached the switchboard from the wall, took the storage batteries from the shelf, cut the wires that connected the chandeliers to the lighting plant, cut the fan wires and removed them, together with all shades, fixtures, etc., and carried all the property away. Leonard knew the property was being advertised for sale, for he received a notice, but did not restrain the sale. Appellants and their attorney testified that if they had known that Leonard owned the property, they would not have made the sale, but would have made him a party. It is not charged in the pleadings that the purchase of Leonard was a mere colorable one and in fact for the use of Gray. In fact, his title is not attacked; but the contention is made that, by remaining silent, Leonard is now estopped to assert title as against appellants. They say that if they had known that Leonard owned the property, they would have stopped the sale and made him a party.

Grobe's lien and sale thereunder are not attacked, but it is conceded that he did not have any notice of appellants' claim against Gray. In short, Grobe was in the attitude of an innocent purchaser as against appellants, and Leonard bought Grobe's title. Did Leonard owe appellants a duty which he failed to perform which led to appellants' injury? Appellants contend that he should have told them he owned the property while he was representing Gray in the foreclosure suit. This knowledge, however, they already had constructively from the records, for the sheriff's return on Grobe's sale would have described who bought the property, and if Leonard had told them that he owned it, he would have been telling them only what they already knew in law. There is no evidence that Leonard made any representations whatsoever such as to mislead appellants. He simply remained silent. If he had spoken, he could have told them no more than what the records already disclosed, of which the law charges appellants with knowledge. Appellants were not buying as is ordinarily done, but were forcing a collection and the sum bid by them for the fixtures was simply credited on their judgment after the costs were paid. The agreed statement of facts says that had Leonard not been out of town, he would have given notice of his claim at the sale. There is no evidence that Leonard induced appellants, even by his silence, to make a purchase of property, appellants going no further than to say that if they had known he owned it, they would have made him a party to the suit.

In the shape in which this record comes to us, there is nothing for us to do but to affirm the judgment; and it is so ordered.

## On Motion for Rehearing.

[3] Upon further consideration of this case, we are of the opinion that we were in error in holding that appellants were chargeable with constructive notice of what the sheriff's return would show. The abstracting of the judgment did no more than to fix a lien upon the property as provided in the statute. That lien had not been foreclosed, and when the county records were examined, they would not have disclosed any sale of the property by deed made for the same. There is no law which makes the papers in a case in court constructive notice, except where specially provided for, such, for instance, as a lis pendens notice. And that acquires its vitality and force as a notice by reason of a compliance with the registration laws by filing it for record in the office of the county clerk. So Leonard was in the attitude of any other person holding an unrecorded deed who stands by and sees his property sold to some one else.

[4, 5] The tenancy of Gray would not protect him because he simply remained in possession after Leonard bought the property, and neither he, Leonard, nor any other person, so far as the record shows, said anything about the change of ownership. Furthermore, Leonard, while he paid $195, obtained a credit on a judgment which was against him, as well as against Gray et al. He knew that the mortgage was being foreclosed, represented Gray in that suit, and approved the judgment which stated that "said lien and said mortgage as it existed on the 15th day of August, 1913, is still in full force and effect." Knowing this and all the facts, and that he held a deed to the property, which he had not recorded, Leonard maintained silence.

"The general rule is that a person who stands by at a judicial sale when his property is being sold as the property of a third person, and makes no objection, but permits purchasers to buy the same, believing that the property belonged to such third person, will be estopped from claiming the property against such purchaser." Gregmoore v. Gilmour, 159 Mo. App. 215, 140 S. W. 765.

Leonard did all this. He said he had intended to enjoin the sale, but decided to give notice at the time the sale was made, but was out of the city. Mr. Bigelow, in his work on Estoppel (6th Ed.) p. 651, says:

"If a man knowingly, though passively, by looking on suffers another to purchase land for valuable consideration under an erroneous impression of title, without making known his claim, he will not be permitted thereafter to exercise his legal right against such person."

Practically to the same effect is the language used in 16 Cyc. p. 762, where it is said:

"An owner of property who stands by and sees a third person selling or mortgaging it under claim of title without asserting his own title or giving the purchaser or mortgagee any notice thereof is estopped, as against such purchaser or mortgagee, from afterward asserting his title"

—and in support thereof is cited Hardeman v. Maud, 78 Tex. 84, 14 S. W. 287; Stanley v. Epperson, 45 Tex. 644; Luter v. Rose, 20 Tex. 639; Moore v. Tarrant County Association, 31 S. W. 709.

So we think that, under all the circumstances, Leonard is clearly estopped to assert his title as against appellants, and, so viewing the case, the motion for rehearing is granted, the judgment of affirmance, as well as the judgment rendered by the trial court, is set aside, and judgment is here rendered that appellee recover nothing against appellants, and that all costs in this court and the court below be adjudged against appellee.

Reversed and rendered.